**CASE NO. 21-30754**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

**RICHARD HERSHEY,**

**PLAINTIFF - APPELLANT**

**V.**

**CITY OF BOSSIER CITY; BOBBY GILBERT, INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY MARSHAL; DANIEL STOLL; DAVID SMITH; TYSHON HARVEY; EUGENE TUCKER,**

**DEFENDANTS – APPELLEES**

An Appeal from the United States District Court
for the Western District of Louisiana

Honorable Terry A. Doughty, Presiding

## APPELLANT'S BRIEF

M. Keith Wren, Ark. Bar #94107
11300 Executive Center Dr.
Suite A
Little Rock, AR 72211
tel. 501-223-0025
fax. 501-223-5309
mkwren@wrenlawfirm.com

Sarah R. Giglio, LA Bar Roll #36272
Gilmer & Giglio, LLC
3541 Youree Drive
Shreveport, Louisiana 71105
tel. 318-459-9111
fax. 318-602-4716
sarah@gilmergiglio.com

*Attorneys for Appellant Richard Hershey*

# CERTIFICATE OF INTERESTED PERSONS

Richard Hershey v. City of Bossier City, et al.

Case No. 21-30754

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Richard Hershey, Plaintiff/Appellant and Counsel

Richard Hershey, Plaintiff/Appellant

M. Keith Wren, Wren Law Firm, Attorney for Plaintiff/Appellant

Sarah R. Giglio, Giglio & Gilmer, Attorney for Plaintiff/Appellant

2. City of Bossier City, Defendant/Appellee and Counsel

City of Bossier City, Louisiana, Defendant/Appellee

Bobby Gilbert, Employee of City of Bossier City, Louisiana

Daniel Stoll, Employee of City of Bossier City, Louisiana

Layne A. Clark, Marjorie L. Frazier, Reid A. Jones, Weiner, Weiss & Madison Attorneys for Bossier City, Gilbert and Stoll

3. David Smith, Tyshon Harvey, Eugene Tucker, Defendants/Appellees

David Smith, Defendant/Appellee

Tyshon Harvey, Defendant/Appellee

Eugene Tucker, Defendant/Appellee

ASM Global, Employer of David Smith, Tyshon Harvey and Eugene Tucker

Sidney W. Degan, III, Mandy A. Simon, Degan, Blanchard & Nash Attorneys for Smith, Harvey, Tucker and ASM Global

/s   M. Keith Wren

1

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff/Appellant, Richard Hershey, requests oral argument in this case. This appeal raises significant issues of constitutional law and the defense of qualified immunity, and Plaintiff believes that adjudication of those issues would be aided by oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................................1

STATEMENT REGARDING ORAL ARGUMENT ...............................................2

TABLE OF AUTHORITIES ...............................................................................5

JURISDICTIONAL STATEMENT .......................................................................7

STATEMENT OF ISSUES ..................................................................................8

STATEMENT OF THE CASE ............................................................................10

SUMMARY OF THE ARGUMENT ....................................................................18

ARGUMENT .....................................................................................................21

    I.    STANDARD OF REVIEW.................................................................21

    II.    MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE PLAINTIFF'S RIGHT TO BE FREE FROM VIEWPOINT DISCRIMINATION WAS CLEARLY ESTABLISHED ON FEBRUARY 28, 2020 ......................................................21

    III.    MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WAS CLEARLY ESTABLISHED ON FEBRUARY 28, 2020 THAT THEY HAD TO PROVIDE PLAINTIFF WITH AMPLE ALTERNATIVE CHANNELS OF COMMUNICATION AND THEY DID NOT ...................................................27

    IV.    MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY ARE EITHER PLAINLY INCOMPETENT OR KNOWINGLY VIOLATED THE LAW ........................28

    V.    PLAINTIFF HAS PLEAD A FACIALLY PLAUSIBLE CLAIM OF FAILURE TO TRAIN AND/OR AN UNCONSTITUTIONAL CUSTOM OR POLICY OF BOSSIER CITY .............................................................29

    VI.    THE COMPLAINT ALLEGES THAT THE CENTURYLINK DEFENDANTS WORKED TOGETHER WITH THE BOSSIER CITY DEFENDANTS TO EJECT PLAINTIFF FROM THE BOSSIER CITY ARENA AND, THEREFORE, PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER THE NEXUS/JOINT ACTION TESTS ...............................................32

VII.    THE COMPLAINT HAS STATED A CLAIM AGAINST THE CENTURYLINK DEFENDANTS UNDER THE PUBLIC FUNCTION TEST38

CONCLUSION .............................................................................................39

CERTIFICATE OF SERVICE .......................................................................40

CERTIFICATE OF COMPLIANCE...............................................................41

# TABLE OF AUTHORITIES

**CASES**

*Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243 (5th Cir. 2017)...........21

*Bass v. Parkwood Hosp.,* 180 F.3d 234 (5th Cir.1999)................................................36

*Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569 (1987) ................................................................................................................27

*Bell Atlantic.* v. *Twombly*, 550 U.S. 544 (2011).................................................. 30, 37

*Bevill v. Fletcher*, No. 20-40250, 2022 WL 420752 (5th Cir. Feb. 11, 2022) .. 36, 37

*Blum v. Yaretsky*, 457 U.S. 991 (1982)............................................................. 36, 38

*Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351 (5th Cir. 2017)..................................................21

*Chiu v. Plano Indep. Sch. Dist.,* 260 F.3d 330 (5th Cir. 2001)................................24

*Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273 (5th Cir. 2003)................................24

*Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248 (5th Cir. 2011).............30

*Guillory v. PPG Indus., Inc.*, 434 F.3d 303 (5th Cir. 2005) ...................................21

*Jackson v. Metropolitan Edison Co.,* 419 U.S. 335 (1974)....................................38

*Just. For All v. Faulkner*, 410 F.3d 760 (5th Cir. 2005)........................................27

*Lee v. Katz*, 276 F.3d 550 (9th Cir. 2002)..............................................................38

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982) ........................................ 35, 36

*Malley v. Briggs,* 475 U.S. 335 (1986)...................................................................28

*Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1291, 204 L.Ed.2d 405 (2019) ................................................................................................................38

*Marsh v. Alabama*, 326 U.S. 501(1946)................................................................38

*Morgan v. Swanson*, 755 F. 3d 757 (5th Cir. 2014) ......................................... 25, 26

*Mullenix v. Luna*, 577 U.S. 7 (2015) .............................................................. 28, 29

*Perry Educ. Ass'n v. Perry Local Educations' Ass'n,* 460 U.S. 37 (1983)............27

*Pindak v. Dart*, 125 F. Supp.3d 720 (2015)...........................................................38

*Police Dept. of Chicago v. Mosley,* 408 U.S. 92 (1972)............................................24

*Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819 (1995)....... 23, 24

*Sullivan v. Leor Energy, LLC*, 600 F.3d 542 (5th Cir. 2010)....................................21

*United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland*, 383 F.3d 449 (6th Cir. 2004).............................................................................................38

*United States v. Price*, 383 U.S. 787 (1966).........................................................36

*Wood v. Moss*, 572 U.S. 744 (2014) ........................................................ 24, 25, 26

# JURISDICTIONAL STATEMENT

Richard Hershey brings this appeal of the district court's decision granting the Defendants motions to dismiss for failure to state a claim. Accordingly, this Court's appellate jurisdiction to review the district court's final order arises from 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States").

# STATEMENT OF ISSUES

I. Whether the District Court erred by granting qualified immunity to Marshal Gilbert and Officer Stoll.

    a. Whether Marshal Gilbert and Officer Stoll should have been denied qualified immunity because they engaged in viewpoint discrimination.

    b. Whether Marshal Gilbert and Officer Stoll should have been denied qualified immunity because they did not provide Plaintiff with an alternative channel of communication.

    c. Whether Marshal Gilbert and Officer Stoll should have been denied qualified immunity because their action of ejecting Plaintiff from the public sidewalk of the Bossier City Arena based upon their statement that he was on private property indicates that they were either plainly incompetent or were knowingly violating the law.

II. Whether the District Court erred by finding that Plaintiff has not plead a facially plausible claim of failure to train and/or an unconstitutional custom or policy of Bossier City.

III. Whether the District Court erred by finding that Plaintiff has not stated a cause of action against the Defendants Smith, Harvey and Tucker,

employees of ASM Global, because Plaintiff had not properly alleged that those Defendants were functioning as state actors.

## STATEMENT OF THE CASE

On February 25, 2021, Richard Hershey, Plaintiff/Appellant (hereinafter, "Hershey" or "Plaintiff") filed his complaint in the United States District Court for the Western District of Louisiana. [ROA.9-30] The Defendants were the City of Bossier City, Louisiana, Deputy Marshal Bobby Gilbert of the Bossier City Marshal's Office, and John Does I-IV. In general, Plaintiff claimed that his rights under the First Amendment to the United States Constitution were violated when, on February 28, 2020, he was removed from the sidewalk of the Bossier City Arena, under threat of arrest, by law enforcement officers of Bossier City, Louisiana and security personnel of the Arena, because he was peacefully distributing leaflets espousing a vegan lifestyle on the sidewalk of the Arena. The Bossier City Arena is a public facility owned by the City of Bossier City, Louisiana. [ROA.11] At that time, the Arena was known as the CenturyLink Center. [ROA.11] Attached to the Plaintiff's complaint was Exhibit 1, e-mail correspondence between the manager of the Arena and Plaintiff's counsel within which the manager of the Arena, who had been asked, pursuant to the Louisiana Public Records Act, for the policies governing leafletting, demonstrating, speech and picketing on the Arena grounds, responded on November 2, 2020, stating that "[I]f the public would like to engage in a peaceful protests or distribution of pamphlets, they are free to do so as long as it does not interfere with the safe

ingress or egress of guests." Further, the manager relayed that the Bossier City Arena is owned by Bossier City Louisiana, but is managed by ASM Global, a private company. [ROA.27-30]

The District Court allowed limited early discovery in order to learn the identity of certain John Doe Defendants who participated in the removal of Plaintiff from the sidewalk of the Arena. [ROA.63] Following that, an Amended Complaint was filed that added as named Defendants, Daniel Stoll, a Bossier City police officer, and David Smith, Tyshon Harvey, and Eugene Tucker, security personnel employed by ASM Global. [ROA.93-111] The Amended Complaint, however, inadvertently, did not have Exhibit 1 attached to it as had been attached to the original Complaint. [ROA.155-60] The District Court allowed the Exhibit 1 to be attached to the Amended Complaint. [ROA.167]

On June 3, 2021, the Separate Defendants, Bossier City, Louisiana, Bobby Gilbert and Daniel Stoll [hereinafter, the "Bossier City Defendants"] filed their Motion to Dismiss, or in the Alternative, Motion for Judgment on the Pleadings, arguing, generally, that the sidewalk adjacent to the Arena was neither a traditional public forum, nor a designated public forum during events and that the Bossier City Defendants did not restrict him from leafletting based upon the content of his speech. [ROA.120-21] Additionally, they argued that Plaintiff had failed to allege

a Monell claim against Bossier City and that Defendants Gilbert and Stoll are entitled to qualified immunity. [ROA.120-21]

On August 6, 2021, the Separate Defendants David Smith, Tyshon Harvey and Eugene Tucker [hereinafter, the "CenturyLink Defendants"] filed their Motion to Dismiss arguing that Smith and Tucker did not deprive Plaintiff of a federal right and that neither Smith, Harvey, nor Tucker were state actors. [ROA.197-98]

The United States Magistrate prepared a separate report and recommendation concerning each motion to dismiss. [ROA.231-54, 279-90] Regarding the Bossier City Defendants, the Magistrate found that the Plaintiff had adequately alleged that the Bossier City Arena was a traditional public forum or a designated public forum, and that the Bossier City Defendants had engaged in viewpoint discrimination, but that the individually named Bossier City Defendants were entitled to qualified immunity and that the Plaintiff had failed to adequately allege a cause of action against the City of Bossier City for an unconstitutional custom or policy or for failure to train. [ROA.231-54] Concerning the CenturyLink Defendants, the Magistrate found that the Plaintiff had failed to allege a cause of action against the CenturyLink Defendants because they could not be considered to be state actors neither under the public function test, the nexus test, the joint action test nor the state coercion test. [ROA.279-90] The Magistrate's reports and recommendations were, after a *de novo* review of the record by the District Court,

accepted respectively by the District Court on September 24, 2021 and November 17, 2021. [ROA.277, 296] The Notice of Appeal was filed on December 14, 2021. [ROA.298-99]

The relevant factual allegations from the Amended Complaint are as follows:

14. On the afternoon of February 28, 2020, Plaintiff Hershey was on the public sidewalk on the grounds of CenturyLink Center.

15. At all times relevant herein, Hershey was distributing free, educational, noncommercial, religious booklets on behalf of a nonprofit organization named the Christian Vegetarian Association.

16. Hershey is a vegetarian advocate whose ethical beliefs compel him to share his message with others.

17. Hershey is compensated by various nonprofit organizations for his advocacy and distribution of literature.

18. CenturyLink Center does not have any formal application process for requesting permission to distribute leaflets.

19. CenturyLink Center does not have any written or official policy prohibiting, regulating or licensing the distribution of leaflets on its grounds.

20. Defendant the City has a long-standing custom of allowing police officers, employees and/or officials of CenturyLink Center to use their unfettered discretion to arbitrarily and capriciously remove individuals who are peacefully exercising their First Amendment rights from the CenturyLink property.

21. The CenturyLink Center is situated in a public park encompassed by the boundary streets of Arthur Ray Teague Parkway, Angelle Drive, CenturyLink Center Drive, and Reeves Marine Drive which are connected to the public streets and sidewalks through the

park leading to the CenturyLink Center. There is no gate or restriction on access to any of the public sidewalks and streets through the park to the CenturyLink Center.

22. Hershey's leafleting activity was entirely peaceable and non-aggressive in all respects and was designed only to share information concerning vegetarian issues with those who were interested in receiving the information.

23. At no time relevant herein did Hershey ever create a disturbance or interference with pedestrian or vehicular traffic or violate any other law.

24. On February 28, 2020, there was a Christian rock concert known as Winter Jam being held at CenturyLink Center.

25. Within the park surrounding the Center, the sidewalks, including the sidewalk where Hershey was distributing his literature, streets, staircases, grassy areas, and parking lots were all open to the public.

26. Because of potential safety concerns, Hershey did not distribute his booklets on the staircases or in the parking lots.

27. At least one other person, who was not associated with Hershey, was distributing commercial advertisement cards for an internet radio station, Power 927 FM, and Hershey accepted a card from that leafleteer on the sidewalk on outdoor grounds of CenturyLink Center.

28. After Hershey had begun to distribute booklets, Hershey was approached by Defendants Gilbert, acting under color of Louisiana law as a Deputy City Marshal of Bossier City; Officer Daniel Stoll, acting under of color of Louisiana law as police officer of Bossier City; David Smith, acting under of color of Louisiana law as a security officer of the CenturyLink Center and at all times relevant herein was a willing participant in joint action with state actors; Tyshon Harvey, acting under color of Louisiana law as a security officer for CenturyLink Center and as a willing participant in joint action with state actors; Eugene Tucker, acting under color of

14

Louisiana law as a security officer for CenturyLink Center and as a willing participant in joint action with state actors.

29. Gilbert approached Hershey from the rear and made unwanted physical contact with Hershey by placing his hand on Hershey while Hershey was distributing his literature outdoors on the grounds of the CenturyLink Center.

30. Hershey turned around to see defendants Gilbert, Stoll, and Harvey standing there, and Hershey objected to Gilbert's unwanted physical contact.

31. Gilbert waved a pair of handcuffs at Hershey.

32. Stoll told Hershey that he had been told to leave the public park.

33. Hershey replied that nobody had told him to leave.

34. Gilbert told Hershey that he had bracelets for Hershey, that he would put the bracelets on him, and that he would take him to jail.

35. Hershey attempted to explain that he had a legal right to hand out his literature, but Gilbert cut him off and would not allow him to explain.

36. Gilbert told Hershey that he was on private property, that he had to leave, that he would be arrested if he did not leave, and that he could not return.

37. Gilbert stated to Hershey as reason for stopping his leafleting to the attendees being that people were there to have a good time.

38. Although Hershey believed the order to be unlawful, fearing arrest, he agreed to leave.

39. Hershey attempted to leave, but Gilbert was blocking his egress.

40. Defendants Smith and Tucker arrived shortly thereafter.

41. Gilbert asked Hershey why he wasn't leaving, and Hershey replied that Gilbert was blocking his egress.

15

42. Gilbert then allowed Hershey to leave.

43. Gilbert informed Hershey that if he returned, he would go to jail.

44. As Hershey was leaving, he inquired about the commercial literature distribution, and Hershey showed the card from the radio station Power 927 FM to Defendants Gilbert, Stoll, Harvey, Smith, and Tucker.

45. Defendant Harvey replied that Hershey's literature had not been approved by CenturyLink Center, and that Hershey had to submit his literature in advance for approval.

46. Hershey asked again why they were allowing the commercial literature distribution.

47. Harvey replied that because he didn't know if the other literature had been approved, but that Hershey's literature was not approved so he had to leave.

48. Smith and Tucker were present during Hershey's ejectment from the park surrounding CenturyLink Center, and, acting jointly with the other Defendants, used their command presence to assist in the removal of Hershey from the park by Defendant Deputy Marshal Gilbert, Officer Stoll, and Harvey.

49. Hershey left the grounds of the park outside of CenturyLink Center without handing out any more of his literature while the other leafleteer continued to hand out her commercial literature without interference from Bossier City officials.

50. There were no alternate avenues available to Hershey for handing out his literature to the concert attendees.

51. Fearing arrest and jailing, Hershey has not returned to the CenturyLink grounds to distribute his literature or for any other reason.

. . .

67.     Defendant the City failed to provide adequate training for its law enforcement officers and others allowed to serve as security personnel at the Bossier City Arena by failing to train them that the Bossier City Arena and the park surrounding it are public property and, therefore, the citizens using that property are entitled their constitutional rights guaranteed by the First Amendment.

68.     The lack of training by the City led to the belief by Defendant Deputy Marshal Gilbert and the other individually named Defendants that the Bossier City Arena and the park surrounding it are private property and, thus, citizens could be ordered off of the property with no regard to the citizen's First Amendment rights.

69.     Defendant the City failed to train its law enforcement officers and others allowed to serve as security personnel at the Bossier City Arena how to take into account the First Amendment rights of citizens on the Arena property by enforcing only reasonable time place and manner restrictions on the rights of citizens as opposed to blanket denials of access to the property.

70.     The lack of training was so great and so inadequate and the risk of constitutional harm was so obvious by the failure to train the delineation between public and private property, that it became an unconstitutional custom or policy of the City and was the moving force behind, the but for cause of, and the proximate cause of Hershey's removal from the property on February 28, 2020.

[ROA.97-102, 108-09]

## SUMMARY OF THE ARGUMENT

Although the District Court found that the Plaintiff had alleged that the sidewalk around the Bossier City Arena on which he was leafletting on February 28, 2020 was either a traditional public forum or a designated public forum, and that the Bossier City Defendants had engaged in viewpoint discrimination by ejecting him from the premises while allowing another leafleteer to remain, the District Court found that the Bossier City Defendants were entitled to qualified immunity. The District Court's reasoning was that the Plaintiff had not pointed "to a single decision from any court that has held, before or after the date of this incident, that an officer violated the rights of a leafleteer who was removed from a similar arena premises." [ROA.243] The District Court's grant of qualified immunity was in error because it had already determined that the Plaintiff had properly alleged that the forum within which he was leafletting was either a traditional public forum or a designated public forum. Moreover, because the Plaintiff had properly alleged that the Bossier City Defendants had engaged in viewpoint discrimination, which was prohibited in any forum well before February 28, 2020, the District Court erred by granting the Bossier City Defendants qualified immunity.

Additionally, the District Court should not have granted qualified immunity because the Bossier City Defendants did not provide the Plaintiff with an alternate

channel of communication, the right to which was clearly established prior to February 28, 2020.

Finally, the actions of the Bossier City Defendants were either plainly incompetent or were in knowing violation of the law. Marshal Gilbert, in the presence of Officer Stoll and Defendant Harvey, told the Plaintiff, while he was on the public sidewalk of the Bossier City Arena, that that he was on private property, that he had to leave, and that he would be arrested if he did not leave. If the Bossier City Defendants actually believed that the public sidewalk of the Bossier City Arena was private property, then they were plainly incompetent and not entitled to qualified immunity. Alternatively, if they were indeed aware that it was not private property and were just lying to the Plaintiff in order to intimidate him to leave the public property, then they were knowingly violating the law and, therefore, not entitled to qualified immunity.

Regarding the failure to train claim against the City of Bossier City, the District Court erred in dismissing that claim. The Plaintiff made specific factual allegations that the City's failure to train its officers on the most basic principles of First Amendment law, such as the fact that the Bossier City Arena is on public property, inevitably led to the individually named officers ejecting Plaintiff from the property because it was "private property." Additionally, the Bossier City Defendants were not trained that they cannot engage in viewpoint discrimination

19

and that they must provide alternative channels of communication if they are going to enforce time, place and manner restrictions on speech. Further, the lack of this most basic training led to the violation of the Plaintiff's rights.

The District Court erred when it found that the CenturyLink Defendants were not state actors. Defendant Harvey was present during the entire encounter with the Plaintiff, when Plaintiff asked why he was being ejected from the grounds of the Bossier City Arena, but the Power 927 leafleteer was allowed to stay, it was Harvey who told him that it was because his leaflets had not been approved. Tucker and Smith were also present when that exchange occurred between Plaintiff and Harvey. Then, Harvey, Tucker and Smith, along with the Bossier City Defendants, were involved in ensuring that Plaintiff left the premises. As a result, the allegations of the First Amended Complaint support a claim that Smith, Harvey and Tucker met the criteria of the joint action/nexus test.

Additionally, the actions of Smith, Harvey and Tucker constituted the regulation of speech on the public sidewalk. The regulation of speech in a public forum has been traditionally and exclusively the prerogative of the state. As such, Smith, Harvey and Tucker's actions also meet the criteria of the public function test and, therefore, they are state actors for the purposes of this case.

**ARGUMENT**

## I.   STANDARD OF REVIEW

After a Magistrate Judge issues his Report and Recommendations, when the district court undertakes an independent review of the record, the review by the court of appeals is *de novo*. *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005); *Alexander v. Verizon Wireless Servs., L.L.C.,* 875 F.3d 243, 248 (5th Cir. 2017).  "We review de novo a district court's dismissal under Rule 12(b)(6), accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 546 (5th Cir. 2010); *Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24*, 866 F.3d 351, 360 (5th Cir. 2017)

## II.   MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THE PLAINTIFF'S RIGHT TO BE FREE FROM VIEWPOINT DISCRIMINATION WAS CLEARLY ESTABLISHED ON FEBRUARY 28, 2020

The District court correctly found that the Plaintiff's Complaint has alleged that the Bossier City Arena property is a traditional public forum, or is a designated public forum. [ROA.238]  The District Court also correctly found that the Complaint has alleged a claim of viewpoint discrimination on the part of the police officers because the officers were aware that there were two people passing out

21

leaflets and yet Plaintiff was orrdered to leave, without taking any action with

respect to the other leafleteer. [ROA.240] Specifically, the Plaintiff alleged that:

> 44.    As Hershey was leaving, he inquired about the commercial literature distribution, and Hershey showed the card from the radio station Power 927 FM to Defendants Gilbert, Stoll, Harvey, Smith, and Tucker.
>
> 45.    Defendant Harvey replied that Hershey's literature had not been approved by CenturyLink Center, and that Hershey had to submit his literature in advance for approval.
>
> 46.    Hershey asked again why they were allowing the commercial literature distribution.
>
> 47.    Harvey replied that because he didn't know if the other literature had been approved, but that Hershey's literature was not approved so he had to leave.
>
> [ROA.101-02]

Despite the fact that the District Court had found that the Plaintiff had

adequately alleged that the sidewalks of the Bossier City Arena were either a

traditional public forum or a designated public forum, the District Court then went

on to find that the individual officers would be granted qualified immunity, stating

that:

> Plaintiff does not point to a single decision from any court that has held, before or after the date of this incident, that an officer violated the rights of a leafleteer who was removed from a similar arena premises. The discussions above demonstrate that there are many nuances to First Amendment claims of this nature, beginning with questions about the category of the forum and continuing through the reasonableness of various regulations or restrictions. Very little about this field of law is clearly established.

[ROA.243]

This analysis by the District Court is flawed. The cases cited by the Bossier City Defendants in their motion regarding First Amendment activity outside of event arenas either focused upon either the question of what type of forum the area in question was, i.e., a traditional public forum, a limited public forum, a non-public forum etc…, or the question of a facial attack on the constitutionality of policies in a known type of forum outside of an event arena. [ROA.133-38] None of those considerations are relevant here with regard to the question of qualified immunity in this case. This is so, because, first, the District Court had already found that the Plaintiff had sufficiently alleged that the sidewalks of the Bossier City Arena were either a traditional public forum or a designated public forum. Second, and more importantly, regardless of the type of forum that this Court may ultimately find to exist outside of the Bossier City Arena, or the various regulations or restrictions that may or may not exist therein, viewpoint discrimination is prohibited in **all** forums and under **any** regulation or restriction and that law was clearly established well before February 28, 2020.

As the Supreme Court has stated, "[i]t is axiomatic that the government may not regulate speech based on ... the message it conveys." *Rosenberger v. Rector and Visitors of Univ. of Va.,* 515 U.S. 819, 828 (1995). Such viewpoint discrimination presumptively is impermissible whether it occurs within or outside

a private speech forum. *Ark. Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 676 (1998), (viewpoint discrimination is impermissible even where no forum is created at all); *Rosenberger,* 515 U.S. at 828 (viewpoint discrimination is presumed impermissible in any forum under forum analysis); "viewpoint discrimination is a clearly established violation of the First Amendment in any forum*." Chiu v. Plano Indep. Sch. Dist.,* 260 F.3d 330, 350 (5th Cir. 2001) (*Chiu I*); *Chiu v. Plano Indep. Sch. Dist.,* 339 F.3d 273, 280 (5th Cir. 2003) (*Chiu II*).

In *Wood v. Moss*, the United States Supreme Court could not have stated it more clearly that viewpoint discrimination is both prohibited and is clearly established when they said:

> It is uncontested and **uncontestable** that government officials may not exclude from public places persons engaged in peaceful expressive activity solely because the government actor fears, dislikes, or disagrees with the views those persons express. See, *e.g., Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 96, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972).

*Wood v. Moss*, 572 U.S. 744, 756–57 (2014) (emphasis added)

In certain circumstances, qualified immunity has been granted to government officials who may have engaged in viewpoint discrimination, but only where the government actor was in the unenviable position of having to balance between competing, significant, constitutional interests.  For example, in *Wood,*

*supra*, Secret Service agents were granted qualified immunity in a situation where former President George W. Bush made an unplanned stop for dinner at a restaurant. A group of protesters were made to move a greater distance away from the President than a group of his supporters. In that narrow situation and "limiting" their decision to the facts at hand, the Supreme Court first noted that "'[t]he physical security of the President of the United States has a special legal role to play in our constitutional system." *Id*. at 758–59, 764. They then stated that it could not be said that the agents had acted to move the protesters "without a valid security concern," and, therefore, they were granted qualified immunity. *Id*. at. 763.

In the instant case, the District Court cited the case of *Morgan v. Swanson*, 755 F. 3d 757 (5th Cir. 2014), for the proposition that "[i]mmunity was warranted 'because the general state of the law in this area is abstruse, complicated, and subject to great debate among jurists.'" [ROA.243] *Morgan* was like *Wood, supra*, in that it involved the governmental actors attempting to balance competing, significant constitutional interests.

The reliance upon *Morgan*, is inapplicable. In that case, just as in *Wood*, the government actors were forced to balance competing constitutional interests. In *Morgan*, school principals, had not allowed grade school children to distribute religious gifts at school, such as pencils and cards, fearing that to do so would

violate the Establishment Clause of the First Amendment.  There, the Fifth Circuit

stated with regard to granting qualified immunity, that:

> When educators encounter student religious speech in schools, they
> must balance broad constitutional imperatives from three areas of
> First Amendment jurisprudence: the Supreme Court's school-speech
> precedents, the general prohibition on viewpoint discrimination, and
> the murky waters of the Establishment Clause. They must maintain
> the delicate constitutional balance between students' free-speech rights
> and the Establishment Clause imperative to avoid endorsing religion.
> "The many cases and the large body of literature on this set of issues"
> demonstrate a "lack of adequate guidance," which is why no federal
> court of appeals has ever denied qualified immunity to an educator in
> this area. We decline the plaintiffs' request to become the first.
>
> …
>
> We thus evaluate student speech claims "in light of the special
> characteristics of the school environment."

*Morgan v. Swanson*, 659 F.3d 359, 371, 375 (5th Cir. 2011).

The facts of *Wood* and *Morgan* are a far cry from the facts of the instant

case.  Here, there are no constitutional balancing tests at issue, such as the safety of

the President or concerns over the prohibition of establishment of religion, nor any

"murky waters" of law to be navigated, nor the special characteristics of the school

environment.  There is here, however, a robust consensus of law that can leave no

doubt that, regardless of the forum, viewpoint discrimination is prohibited by the

First Amendment and that government officials may not exclude from public

places people engaged in peaceful expressive conduct based upon the message that

they are conveying. *Wood, supra*.  As the District Court correctly found, the

26

Plaintiff here has adequately stated a claim that the forum at issue is a traditional public forum and that the Defendants engaged in viewpoint discrimination when they ejected him, but allowed the Power 927 leafleteer to remain. Consequently, there was a constitutional violation alleged and it was clearly established prior to February 28, 2020, regardless of what type of forum this Court may find to exist outside of the Bossier City Arena. Therefore, the Marshal Gilbert and Officer Stoll are not entitled to qualified immunity.

**III.  MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE IT WAS CLEARLY ESTABLISHED ON FEBRUARY 28, 2020 THAT THEY HAD TO PROVIDE PLAINTIFF WITH AMPLE ALTERNATIVE CHANNELS OF COMMUNICATION AND THEY DID NOT**

As pointed out in the Plaintiff's Objections to the Magistrate's Report and Recommendations [ROA.272], the District Court also did not address the fact that, even assuming that the Officers were not engaging in viewpoint discrimination, it was clearly established prior to February 28, 2020 that if they were attempting to enforce a time, place and manner restriction, that they must also "leave open ample alternative channels of communication." *Perry Educ. Ass'n v. Perry Local Educations' Ass'n,* 460 U.S. 37, 45 (1983); *Bd. of Airport Comm'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 573 (1987); *Just. For All v. Faulkner*, 410 F.3d 760, 769 (5th Cir. 2005). Here, they did not, but instead,

unconditionally ejected the Plaintiff from the property. [ROA.102, ¶¶ 48-51] Thus, for this additional reason Defendants Gilbert and Stoll are not entitled to qualified immunity.

**IV. MARSHAL GILBERT AND OFFICER STOLL ARE NOT ENTITLED TO QUALIFIED IMMUNITY BECAUSE THEY ARE EITHER PLAINLY INCOMPETENT OR KNOWINGLY VIOLATED THE LAW**

"[Q]ualified immunity ... provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). Plaintiff was distributing his leaflets on the public sidewalk of the Bossier City Arena on February 28, 2020, when he was told to leave the public property because it was "private property," and that his leaflets had not been pre-approved, and that if he did not leave that he would be arrested. [ROA.100-02, ¶¶ 28-51] If Defendants Gilbert and Stoll genuinely believed that Plaintiff did not have any First Amendment rights on the Bossier City Arena property because it was private property, then they are "plainly incompetent" and are, thus, not entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). If, on the other hand, they knew that Plaintiff was on not on private property and were just lying to Plaintiff in order to eject him from the property despite his First Amendment rights, then they "knowingly violated the law" and

28

are, thus, not entitled to qualified immunity. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015).

### V. PLAINTIFF HAS PLEAD A FACIALLY PLAUSIBLE CLAIM OF FAILURE TO TRAIN AND/OR AN UNCONSTITUTIONAL CUSTOM OR POLICY OF BOSSIER CITY

The District Court faults the Plaintiff's failure to train claim, stating that "Plaintiff does not focus on any particular inadequacy of the City's training of its police officers and deputy city marshals" and that "[n]o particular facts about the City's training program are alleged." [ROA.247] This finding by the District Court is incorrect, in paragraphs sixty-seven through sixty-nine of the Amended Complaint, the Plaintiff makes specific factual allegations concerning the lack of training, to wit:

> 67. Defendant the City failed to provide adequate training for its law enforcement officers and others allowed to serve as security personnel at the Bossier City Arena by failing to train them that the Bossier City Arena and the park surrounding it are public property and, therefore, the citizens using that property are entitled their constitutional rights guaranteed by the First Amendment.
>
> 68. The lack of training by the City led to the belief by Defendant Deputy Marshal Gilbert and the other individually named Defendants that the Bossier City Arena and the park surrounding it are private property and, thus, citizens could be ordered off of the property with no regard to the citizen's First Amendment rights.
>
> 69. Defendant the City failed to train its law enforcement officers and others allowed to serve as security personnel at the Bossier City Arena how to take into account the First Amendment rights of citizens on the Arena property by enforcing only reasonable time place and

manner restrictions on the rights of citizens as opposed to blanket denials of access to the property.

70.     The lack of training was so great and so inadequate and the risk of constitutional harm was so obvious by the failure to train the delineation between public and private property, that it became an unconstitutional custom or policy of the City and was the moving force behind, the but for cause of, and the proximate cause of Hershey's removal from the property on February 28, 2020.

[ROA.108-09]

Thus Plaintiff has alleged specific facts regarding the deficiencies of the City's training program as it relates to the First Amendment in general and, in paragraph seventy, specifically how it relates to the Bossier City Arena property where the events described in the Complaint occurred.  Considering that the law is that the complaint need not contain "detailed factual allegations," this is more than enough the state a plausible claim.  *See Colony Ins. Co. v. Peachtree Constr., Ltd.*, 647 F.3d 248, 252 (5th Cir. 2011) (quoting *Bell Atlantic.* v. *Twombly*, 550 U.S. 544, 555 (2011)).

In the Plaintiff's Memorandum in Response to Defendants' Motion to Dismiss and/or Judgment on the Pleadings, the Plaintiff made the alternative argument that a failure to train claim can, in some circumstances, be based upon only a single incident. ("Even in the absence of a pattern of unconstitutional conduct, municipal liability can be based upon a single incident of failure to train.") [ROA.189] It appears from his report that the District Court incorrectly

took this to mean that was the only theory under which the Plaintiff is asserting his claim. If that is so, the District Court was incorrect because the Plaintiff alleged that:

> 58. Defendant City's failure to have a policy, or by **acquiescence in the arbitrary and capricious denial of citizens' First Amendment rights** by the CenturyLink Center officials, or by failing to train its police officers, employees and officials that the Bossier City Arena, aka CenturyLink Center, is public property and a traditional public forum, has created an unconstitutional custom by the City of Bossier City, Louisiana. That unconstitutional custom or policy was the moving force behind the security officers of CenturyLink Center, police officers of the City, and Deputy Marshal of the City's, interference with Hershey's exercise of his First Amendment rights on the CenturyLink Center outdoor grounds.

and that

> 70. The lack of training was so great and so inadequate and **the risk of constitutional harm was so obvious by the failure to train the delineation between public and private property, that it became an unconstitutional custom or policy of the City** and was the moving force behind, the but for cause of, and the proximate cause of Hershey's removal from the property on February 28, 2020.

[ROA.104, 109]

As can be seen from paragraphs fifty-eight and seventy, the City is alleged to have acquiesced in in the denial of citizen's First Amendment rights and that the risk of constitutional harm was obvious, yet it maintained its lack of training regarding the areas set out in paragraphs sixty-seven through sixty-nine. Meaning that the City has passively accepted the denial of the First Amendment right by

citizens other than the Plaintiff, thus, the City had knowledge of the situation, and that the lack of training in that situation was so inadequate that it became the custom or policy of the City. Admittedly, the Plaintiff did not use the label, "deliberate indifference," but a fair reading of the aforementioned allegations unmistakably convey that idea. As a result, the Plaintiff has alleged a cause of action against the City for failure to train.

Finally, the District Court's recommendations concerning Plaintiff's allegation regarding training using the phrases "lack of training" and "inadequate training" versus the specific allegation of "no training at all" should not be outcome determinative. No training at all is most certainly inadequate, and therefore, the Plaintiff's complaint has stated a claim in this regard.

**VI. THE COMPLAINT ALLEGES THAT THE CENTURYLINK DEFENDANTS WORKED TOGETHER WITH THE BOSSIER CITY DEFENDANTS TO EJECT PLAINTIFF FROM THE BOSSIER CITY ARENA AND, THEREFORE, PLAINTIFF HAS STATED A CAUSE OF ACTION UNDER THE NEXUS/JOINT ACTION TESTS**

The District Court's Report and Recommendation is incorrect in that it states that the joint action test is not met because "[t]he Complaint does not allege that there was a meeting of the minds or a conspiracy to deprive Plaintiff of his constitutional rights. The Complaint does not allege that there was a plan, custom or policy that substituted the judgment of the security guards for that of the police

32

or allowed the private security guards to exercise state power." [ROA.288] In essence, the District Court has stated that the joint action test is conflated with a conspiracy engaged in through an exchange of words.

The District Court's also found that the nexus test is not met because "[t]here is nothing the Complaint to indicate the existence of a 'close nexus' between the challenged action of the security guards and the State." [ROA.287] Both of these findings were incorrect.

The relevant factual allegations are as follows:

30. Hershey turned around to see defendants Gilbert, Stoll, and Harvey standing there, and Hershey objected to Gilbert's unwanted physical contact.

31. Gilbert waved a pair of handcuffs at Hershey.

32. Stoll told Hershey that he had been told to leave the public park.

33. Hershey replied that nobody had told him to leave.

34. Gilbert told Hershey that he had bracelets for Hershey, that he would put the bracelets on him, and that he would take him to jail.

35. Hershey attempted to explain that he had a legal right to hand out his literature, but Gilbert cut him off and would not allow him to explain.

36. Gilbert told Hershey that he was on private property, that he had to leave, that he would be arrested if he did not leave, and that he could not return.

37. Gilbert stated to Hershey as reason for stopping his leafleting to the attendees being that people were there to have a good time.

38. Although Hershey believed the order to be unlawful, fearing arrest, he agreed to leave.

39. Hershey attempted to leave, but Gilbert was blocking his egress.

40. Defendants Smith and Tucker arrived shortly thereafter.

41. Gilbert asked Hershey why he wasn't leaving, and Hershey replied that Gilbert was blocking his egress.

42. Gilbert then allowed Hershey to leave.

43. Gilbert informed Hershey that if he returned, he would go to jail.

44. As Hershey was leaving, he inquired about the commercial literature distribution, and Hershey showed the card from the radio station Power 927 FM to Defendants Gilbert, Stoll, Harvey, Smith, and Tucker.

45. Defendant Harvey replied that Hershey's literature had not been approved by CenturyLink Center, and that Hershey had to submit his literature in advance for approval.

46. Hershey asked again why they were allowing the commercial literature distribution.

47. Harvey replied that because he didn't know if the other literature had been approved, but that Hershey's literature was not approved so he had to leave.

48. Smith and Tucker were present during Hershey's ejectment from the park surrounding CenturyLink Center, and, acting jointly with the other Defendants, used their command presence to assist in the removal of Hershey from the park by Defendant Deputy Marshal Gilbert, Officer Stoll, and Harvey.

[ROA.100-02]

Here, the Defendants Smith, Harvey and Tucker actively and overtly

engaged with the state officials Gilbert and Stoll to remove Plaintiff from public

property.  Harvey informed Plaintiff in the presence of all of the named Defendants that the reason that he was being removed was because his leaflets had not been approved and that, because his leaflets had not been approved, that he had to leave. [ROA.101-02, ¶¶ 40-48]  Then all of the CenturyLink Defendants, along with the Bossier City Defendants saw to it that he left the property.  Plaintiff was not told by any of the police officers that he was being removed because he was otherwise violating the law, but he was threatened with arrest if he did not leave the property, the only reason given for which was by the CenturyLink Defendant, Harvey, in the presence of all of the individually named Defendants.  Although the Bossier City Defendants and the CenturyLink Defendants may not have come to an explicit agreement set out in words, it is abundantly clear by their actions that they were all in agreement that their purpose was to remove Plaintiff from the property and that it was because of the content of his leaflets.

With respect to an action brought under 42 U.S.C. § 1983, a private individual's conduct may be considered state action if it is considered "fairly attributable" to the state. *Lugar v. Edmonson Oil Co.,* 457 U.S. 922, 937 (1982).  In *Lugar*, the Supreme Court held that:

> Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an

> officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 941 (1982), quoting *United States v. Price*, 383 U.S. 787, 794 (1966).

Under the nexus test, a private party will be considered a state actor "where the government has 'so far insinuated itself into a position of interdependence with the [private actor] that it was a joint participant in the enterprise,' " and the actions of the private party can be treated as that of the state itself. *Bass v. Parkwood Hosp.,* 180 F.3d 234, 242 (5th Cir.1999), *see also Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982).

The Amended Complaint could not be more clear that Defendants Smith, Harvey and Tucker were working together jointly and interdependently with Officer Stoll and Marshal Gilbert to remove the Plaintiff from the property, regardless of whether there was an explicit agreement among them set out in words. The recent case of *Bevill v. Fletcher*, No. 20-40250, 2022 WL 420752 (5th Cir. Feb. 11, 2022), is instructive on this point. In *Bevill*, the plaintiff accused the defendants of engaging in a conspiracy to violate his civil rights, but there was no specific allegation of an agreement amongst them. The plaintiff in that case argued that one of the defendant's statement in the local newspaper that it was important for the defendants to work together, that the plaintiff was aware of the close working relationship among the defendants, and the fact that the defendants met

with his employer to ask for his termination "raise[ed ] a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." *Bevill*, at *10, *quoting Bell Atlantic v. Twombly*, 550 U.S. at 557. This Court agreed, stating, "a 'probability requirement at the pleading stage; [plausibility] simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.' " *Id*., *quoting Bell Atlantic v. Twombly*, 550 U.S. at 610.

Here, Plaintiff turned around to find himself confronted by the Bossier City Defendants Gilbert and Stoll and the CenturyLink Defendant Harvey. Gilbert told Plaintiff that he was on private property and that he would be arrested if he did not leave. Later when Plaintiff showed the card from the Power 927 leafleteer to all of the assembled Defendants, including CenturyLink Defendants Smith and Tucker, it was Harvey, a CenturyLink Defendant, who told Plaintiff why he was being kicked off of the Bossier City Arena property and then all of the Defendants proceeded to kick Plaintiff off the property. Further, it was the fear of arrest that caused the Plaintiff to leave the property. [ROA.101, ¶ 38] Thus, based upon the overt actions of all of the Defendants, who were all participating in the removal of the Plaintiff from the Bossier City Arena property, it is certainly plausible that discovery will lead to an illegal agreement. *See, Bevill, supra*. Thus, both the nexus and joint

action tests have been satisfied and the holding of the District Court should be reversed.

## VII. THE COMPLAINT HAS STATED A CLAIM AGAINST THE CENTURYLINK DEFENDANTS UNDER THE PUBLIC FUNCTION TEST

The public function test is met if the private actors engage in activities that are "traditionally the exclusive prerogative of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982), *quoting Jackson v. Metropolitan Edison Co.,* 419 U.S. 335, 353 (1974). The regulation of speech in a public forum has been traditionally and exclusively a function of the state. *See, Marsh v. Alabama*, 326 U.S. 501, 505–06 (1946), *cited in Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002); *see also United Church of Christ v. Gateway Econ. Dev. Corp. of Greater Cleveland*, 383 F.3d 449, 455 (6th Cir. 2004); *Pindak v. Dart*, 125 F. Supp.3d 720, 746-47 (2015).

The District Court's reliance on *Manhattan Cmty. Access Corp. v. Halleck*, 139 S.Ct. 1291, 204 L.Ed.2d 405 (2019) is misplaced. In that case the Supreme Court held that a cable television operator did not become a state actor because it operated a state mandated public access channel. Here, the CenturyLink Defendants engaged in the regulation of speech on the public sidewalk. The only reason that Plaintiff was given for being forced to leave the property was by Defendant Harvey and that it was because Plaintiff's leaflet had not been approved.

Representatives of the State were present to enforce the mandate by Harvey. Therefore, with the consent of the State, the CenturyLink Defendants have engaged in a public function and, therefore, should be considered state actors and the holding of the District Court should be reversed.

## CONCLUSION

For the foregoing reasons, the decision by the District Court that the Plaintiff's causes of action should be dismissed for failure to state a claim should be reversed and this matter should be remanded back to the District Court for further proceedings.

Respectfully submitted,

 s/Matthew Keith Wren
M. Keith Wren, Ark. Bar #94107
11300 Executive Center Dr.
Suite A
Little Rock, AR 72211
tel. 501-223-0025
fax. 501-223-5309
mkwren@wrenlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2022, I served a copy of the above and foregoing on counsel of record for the Defendants via the Court's CM/ECF filing system.

Layne A. Clark
Marjorie L. Frazier
Reid A. Jones
P.O. Box 21990
Shreveport, LA 71120-1990

Sidney W. Degan, III
400 Poydras St., Ste. 2600
New Orleans, LA 70130

Mandy A. Simon
600 Jefferson St., Ste. 800
Lafayette, LA 70501

s/Matthew Keith Wren

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7478 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft® Word for Office 365 MSO (16.0.11929.20978) in font size 14 and Times New Roman font.

s/Matthew Keith Wren
M. Keith Wren

Attorney for the Appellant

Dated: February 28, 2022