No. 21-30754

# In the United States Court of Appeals for the Fifth Circuit

RICHARD HERSHEY,

*Plaintiff-Appellant,*

v.

CITY OF BOSSIER CITY; BOBBY GILBERT, INDIVIDUALLY AND IN HIS CAPACITY AS DEPUTY MARSHALL; DANIEL STOLL; DAVID SMITH; TYSHON HARVEY; EUGENE TUCKER,

*Defendants-Appellees*

---

On Appeal from the United States District Court
for the Western District of Louisiana,
Honorable Terry A Doughty, Presiding
Docket No. 5:21-cv-00460-TAD-MLH

---

**BRIEF FOR LOUISIANA, MISSISSIPPI, AND TEXAS AS AMICI CURIAE
IN SUPPORT OF DEFENDANT-APPELLEES'
PETITION FOR REHEARING EN BANC**

---

| | |
|---|---|
| ELIZABETH B. MURRILL<br>Attorney General of Louisiana | J. BENJAMIN AGUIÑAGA<br>Solicitor General |
| OFFICE OF THE ATTORNEY GENERAL<br>1885 N. 3rd St.<br>Baton Rouge, LA 70802<br>(225) 428-7432<br>SmithKel@ag.louisiana.gov | KELSEY L. SMITH<br>Deputy Solicitor General<br><br>*Counsel for Amici Curiae*<br><br>*Additional counsel listed on signature block* |

# CERTIFICATE OF INTERESTED PERSONS

Under Fifth Circuit Rule 28.2.1, the States of Louisiana, Mississippi, and Texas, as governmental entities, need not furnish a certificate of interested persons.

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ............................................. i

TABLE OF AUTHORITIES ............................................................ iii

STATEMENT OF INTEREST ............................................................ 1

INTRODUCTION ........................................................................ 2

ARGUMENT ............................................................................. 3

I.   REHEARING IS WARRANTED TO REINSTATE THE SETTLED, STRINGENT FAILURE-TO-TRAIN STANDARD AND AVOID DE FACTO STRICT LIABILITY. ................................................. 3

CONCLUSION ......................................................................... 11

CERTIFICATE OF SERVICE ........................................................... 13

CERTIFICATE OF COMPLIANCE ..................................................... 14

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Benfer v. City of Baytown*,
   120 F.4th 1272 (5th Cir. 2024) ......................................................................... 6

*City of Canton v. Harris*,
   489 U.S. 378 (1989) ........................................................................................ 4

*Connick v. Thompson*,
   563 U.S. 51 (2011) .................................................................................... 2, 11

*Goodman v. Harris Cnty.*,
   571 F.3d 388 (5th Cir. 2009) ........................................................................... 6

*Hicks v. LeBlanc*,
   81 F.4th 497 (5th Cir. 2023) ........................................................................... 9

*Hightower v. City of Philadelphia*,
   130 F.4th 352 (3d Cir. 2025) ........................................................................... 4

*J.K.J. v. Polk County*,
   960 F.3d 367 (7th Cir. 2020) ........................................................................... 6

*Jason v. Tanner*,
   938 F.3d 191 (5th Cir. 2019) ....................................................................... 2, 8

*Kirkpatrick v. County of Washoe*,
   843 F.3d 784 (9th Cir. 2016) ........................................................................... 6

*Littell v. Houston Indep. Sch. Dist.*,
   894 F.3d 616 (5th Cir. 2018) ........................................................................... 4

*Estate of Davis ex rel. McCully v. City of N. Richland Hills*,
   406 F.3d 375 (5th Cir. 2005) ........................................................................... 5

*McNeal v. LeBlanc*,
   90 F.4th 425 (5th Cir. 2024), *cert. denied*,
   145 S. Ct. 266 (2024) ............................................................................... 9

*Parker v. LeBlanc*,
   73 F.4th 400 (5th Cir. 2023) .................................................................... 9

*Pena v. City of Rio Grande City*,
   879 F.3d 613 (5th Cir. 2018) ............................................................. 3, 4

*Pineda v. City of Houston*,
   291 F.3d 325 (5th Cir. 2002) .................................................................... 5

*Preiser v. Rodriguez*,
   411 U.S. 475 (1973) ............................................................................... 10

*Roberts v. City of Shreveport*,
   397 F.3d 287 (5th Cir. 2005) ........................................................ 4, 5, 6

*Thompson v. Upshur County*,
   245 F.3d 447 (5th Cir. 2001) .................................................................... 8

*Valentine v. Collier*,
   993 F.3d 270 (5th Cir. 2021) .................................................................. 10

# STATEMENT OF INTEREST

Amici curiae the States of Louisiana, Mississippi, and Texas regularly confront § 1983 suits, including supervisory liability failure-to-train claims. Because the same deliberate-indifference standard governs *Monell* and supervisory liability claims, lowering the bar in this context simultaneously expands municipal exposure and fuels individual-capacity suits against State officials—precisely why the panel's ratcheting down of that standard is so problematic for the States. The panel's expansion of the single-incident, failure-to-train-at-all theory would dilute the Supreme Court's stringent deliberate-indifference standard, invite strict-liability-like exposure, and disrupt the States' considered training judgments—imposing significant fiscal and public-safety costs. Louisiana, Mississippi, and Texas thus have a strong interest in keeping that narrow exception faithful to precedent.

The States file this brief under Federal Rule of Appellate Procedure 29(a)(2).

## INTRODUCTION

Amici curiae the States of Louisiana, Mississippi, and Texas support rehearing en banc because the panel's "failure-to-train-at-all" ruling converts a narrow exception into a near-automatic ticket past Rule 12(b)(6). That expansion is unnecessary and destabilizing. The Supreme Court's framework already sets a clear, administrable line, where municipal and supervisory liability turns on a stringent showing of deliberate indifference—grounded in patterns, notice, and a deliberate policy choice, not on post-hoc inferences from a single incident. *E.g.*, *Connick v. Thompson*, 563 U.S. 51, 62–70 (2011); *Jason v. Tanner*, 938 F.3d 191, 198–99 (5th Cir. 2019). Opinions following that framework preserve accountability for true abdications while preventing courts from back-filling "fault" from injury alone. The panel's approach loosens that line, invites de facto strict liability, and will have concrete and immediate consequences for State operations—especially in prisons and jails.

The Court should grant rehearing en banc and reaffirm the existing, stringent standard, which vindicates constitutional rights while maintaining a workable Rule 12(b)(6) gate and preserving administrable limits on municipal and supervisory liability—and which avoids saddling

States, particularly their prison systems, with outcome-driven liability and intrusive discovery.

## ARGUMENT

**I. REHEARING IS WARRANTED TO REINSTATE THE SETTLED, STRINGENT FAILURE-TO-TRAIN STANDARD AND AVOID DE FACTO STRICT LIABILITY.**

Rehearing en banc is warranted for several reasons. First, the panel expands failure-to-train liability and subverts the settled framework, which is already workable and grounded in notice and deliberate policy choice. Second, its practical effects on the States will be severe—inviting outcome-driven liability, broad discovery on conclusory allegations, and disruptions to State training and operations. Third, it raises serious federalism concerns by drawing federal courts into day-to-day State and local training judgments.

**1.** Louisiana, Mississippi, and Texas regularly litigate failure-to-train claims without doctrinal confusion. Under the settled rule, plaintiffs ordinarily proceed by alleging pattern-based notice; when that is absent, dismissal at the pleading stage is appropriate. *See, e.g.*, *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (affirming dismissal of claim because Plaintiff failed to sufficiently plead a pattern). The "single-incident" path is exceedingly rare: It applies only when (i) a

clear, established constitutional duty exists, (ii) employees are certain to confront the situation, and (iii) the absence of any training makes the violation highly predictable. *City of Canton v. Harris*, 489 U.S. 378, 390 & n.10 (1989); *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). In this Circuit, that exception is "reserved for those cases in which the government actor was provided no training whatsoever." *Pena*, 879 F.3d at 624. Those elements ensure that liability attaches only when a policymaker's deliberate choice to provide no training at all on a clear, recurrent duty predictably caused the injury. *See Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 619–20, 624–29 (5th Cir. 2018) (allowing single-incident claim brought by parents of pre-teen girls to survive a motion to dismiss when a school nurse conducted a strip search with no training, and the parents alleged the district entirely "fail[ed] to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face" (citation omitted)); *see also Hightower v. City of Philadelphia*, 130 F.4th 352, 357 (3d Cir. 2025) (Bibas, J.) (The Supreme Court "has never found this bar satisfied. And the only hypothetical example of this liability that it has recognized is extreme: if a city armed its police with guns and set them

4

loose without any legal training on when to use them.").

That limited exception is workable: It protects constitutional rights while respecting the difference between negligence and deliberate indifference. Perhaps that's why this Court has, for decades, been reluctant to expand this narrow exception. *E.g.*, *Roberts*, 397 F.3d at 295 ("This circuit, in conformity with the Supreme Court's jurisprudence, has been highly reluctant to permit this exception to swallow the rule that forbids mere respondeat superior liability." (footnote omitted)); *Pineda v. City of Houston*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without respondeat superior, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim."); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 385 (5th Cir. 2005). It did not require revision.

Yet, with respect, the panel's decision upends this framework. It elevates context- or forum-specific training gaps into "no training whatsoever" and treats the mere fact of an alleged constitutional violation as proof of "obviousness" and municipal or supervisory fault—precisely the move this Court has been reluctant to endorse for decades.

That contravenes this Court's repeated holdings that generalized assertions that a constitutional violation must have been caused by a failure to train are insufficient. *See, e.g.*, *Goodman v. Harris County*, 571 F.3d 388, 396 (5th Cir. 2009) (Plaintiff's mere statement "that some violations must have existed and these must have been due to a failure to train … is not enough to carry her burden of showing deliberate indifference"); *Roberts*, 397 F.3d at 293 (5th Cir. 2005) ("styling the[] complaint[] about the specific injury suffered as a failure to train claim" isn't sufficient); *Benfer v. City of Baytown*, 120 F.4th 1272, 1287 (5th Cir. 2024). This flips the standard chronology. Instead of demanding ex ante notice and a deliberate policymaker choice, the ruling manufactures "notice" from the outcome, then relabels the absence of a discrete training block as deliberate indifference. That inversion is legally erroneous and warrants en banc correction to restore the settled rule.[1]

**2.** The practical result is a de facto presumption that conclusory "no-training" allegations clear Rule 12(b)(6) and unlock discovery. And once discovery opens, municipalities and State agencies encounter powerful

---

[1] Other circuits have recently gone en banc for *Connick*-related cases. *See J.K.J. v. Polk County*, 960 F.3d 367 (7th Cir. 2020) (en banc); *Kirkpatrick v. County of Washoe*, 843 F.3d 784 (9th Cir. 2016) (en banc).

settlement pressure untethered to any rigorous showing of fault or causation. That is the strict-liability drift the Supreme Court and this Court have repeatedly rejected.

The spillover is not confined to municipalities—it lands squarely on the States. Courts evaluate supervisory liability for State officials using the same deliberate-indifference concepts, and lowering the bar here lowers it everywhere. If "obviousness" can be inferred from a single alleged violation plus a "no training" label, claims against State supervisors will expand despite the absence of notice, deliberate choice, or a predictable causal chain. Negligence-plus theories against supervisors (wardens, chiefs, agency heads) will proliferate—even where frontline law for officers is unsettled or unclear. That shift matters for the States, as it invites personal-capacity damages exposure and chills responsible leadership. As a result, officials will be forced to over-train on speculative topics simply to hedge litigation risk, thus siphoning finite hours away from the highest-salience modules and stalling evidence-based improvements to training curricula. In short, weakening deliberate indifference in the municipal context simultaneously multiplies State exposure in supervisory suits and undermines the very governance

judgments the doctrine is meant to safeguard.

Nowhere will the practical impact be sharper than in prisons and jails. Carceral litigation frequently alleges constitutional violations—conditions of confinement, medical care, use of force, classification—and routinely pairs those allegations with "failure to train." *E.g.*, *Thompson v. Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001) (inadequate medical care and failure to train); *Jason*, 938 F.3d at 195–97 (failure to protect and failure to train). Under the panel's logic, nearly any such case can be repackaged as "so obvious" that a plaintiff need only add a "no training at all" label to survive dismissal. But that belies the reality of training: Specific training needs often become apparent only after an incident reveals an unanticipated gap, underscoring that deliberate indifference turns on notice and a deliberate choice, not an expectation that officials anticipate every constitutional contingency. *See Jason*, 938 F.3d at 199 (emphasizing that "prisons often face novel threats" and limiting the single-incident exception to instances where an "employee is certain to face" "recurrent situations" (citation omitted)).

That pleading shortcut carries serious system costs. Discovery in these cases often demands disclosure of security-sensitive protocols

(contraband interdiction, emergency response sequencing, transport procedures, cell-extraction methods), expanding the surface area for operational compromise without any threshold showing that a policymaker deliberately declined to train on a clear, recurrent duty. Financially, State risk pools and reinsurers will reprice exposure, raising reserves, premiums, and deductibles to account for increased costly litigation. Operationally, wardens will be pressed to reallocate hours away from proven, high-impact modules—like suicide prevention, intake triage for medical and mental-health risks, and post-incident medical care—toward niche, litigation-salient topics. That tradeoff makes facilities less safe, not more.

That dynamic reflects a broader doctrinal trend, not an isolated misstep. The States have repeatedly fallen victim to cases that dilute deliberate indifference and contravene *Connick*'s pattern requirement. *See McNeal v. LeBlanc*, 90 F.4th 425, 432–33 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 266 (2024); *id.* at 435–36 (Duncan, J., concurring) (calling for en banc review to preserve *Connick*'s "critical" "pattern requirement" that "keeps failure-to-train from collapsing into respondeat superior"); *Hicks v. LeBlanc*, 81 F.4th 497, 505–06, 510 (5th Cir. 2023); *Parker v.*

9

*LeBlanc*, 73 F.4th 400, 405–06 (5th Cir. 2023). This decision is another outgrowth, this time effectively writing the pattern-or-practice requirement entirely out of the analysis. Left unchecked, the exception becomes the rule, with hindsight replacing the required ex ante notice and deliberate policymaker choice. This Court should answer Judge Duncan's calls for en banc review, correct course, and reaffirm that deliberate indifference is proved by notice and a deliberate training decision, not by conclusory "no-training" allegations.

**3.** Finally, the federalism point is simple and concrete. Courts enforce constitutional floors. They do not run State training academies, prison curricula, or budget cycles. Especially in corrections, where security and resource constraints are acute, converting "no training" rhetoric into a pleading-stage pass invites federal micromanagement of day-to-day training choices based on a single incident. *See Preiser v. Rodriguez*, 411 U.S. 475, 491–92 (1973) ("It is difficult to imagine an activity in which a State has a stronger interest, or one that is more intricately bound up with state laws, regulations, and procedures, than the administration of its prisons."); *Valentine v. Collier*, 993 F.3d 270, 294 (5th Cir. 2021) (Oldham, J., concurring) ("federalism concerns are

particularly acute in the context of prison management").

The established deliberate-indifference standard respects that boundary while preserving a meaningful remedy for genuine failures. The Court should grant rehearing en banc, vacate the panel's failure-to-train holding, and reaffirm the settled framework: rigorous fault, notice, and causation—with single-incident liability reserved for truly exceptional, well-pled cases.

\* \* \*

The panel's rule is legally erroneous, doctrinally destabilizing, and operationally untenable. En banc, the Court should vacate and reaffirm the settled framework under *Connick* and the like—deliberate indifference proven by a pattern and notice, a deliberate policymaker choice, and a predictable causal link, with single-incident liability reserved for the truly rare case. That course prevents outcome-driven liability and intrusive discovery that burden States and invite federal micromanagement.

## CONCLUSION

This Court should grant the City of Bossier City's petition for rehearing en banc.

| Dated: October 28, 2025 | Respectfully submitted, |
|---|---|
| L<small>YNN</small> F<small>ITCH</small><br>Mississippi Attorney General | E<small>LIZABETH</small> B. M<small>URRILL</small><br>Attorney General of Louisiana |
| K<small>EN</small> P<small>AXTON</small><br>Texas Attorney General | J. B<small>ENJAMIN</small> A<small>GUIÑAGA</small><br>Solicitor General |

*/s/ Kelsey L. Smith*
K<small>ELSEY</small> L. S<small>MITH</small>
Deputy Solicitor General

O<small>FFICE OF THE</small> A<small>TTORNEY</small> G<small>ENERAL</small>
1885 N. 3rd St.
Baton Rouge, LA 70802
(225) 428-7432
SmithKel@ag.louisiana.gov

*Counsel for Amici Curiae*

12

## CERTIFICATE OF SERVICE

I certify that on October 28, 2025, I filed the foregoing brief with the Court's CM/ECF system, which will automatically send an electronic notice of filing to all counsel of record.

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

# CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Circuit Rule 32.3, the undersigned certifies that this brief complies with:

(1) the type-volume limitations of Federal Rule of Appellate Procedure 29(b) because it contains 2,006 words, excluding the parts of the document exempted by Rule 32(f); and

(2) the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook font, except for footnotes in 12-point font) using Microsoft Word (the same program used to calculate the word count).

*/s/ Kelsey L. Smith*
KELSEY L. SMITH

Dated: October 28, 2025